Argued and submitted July 22, 1987, affirmed May 11, 1988

STATE OF OREGON,
EXECUTIVE DEPARTMENT et al,
*Petitioners,*

*v.*

OREGON PUBLIC EMPLOYES UNION,
*Respondent.*

(AR-5-85; CA A42339)

754 P2d 582

Charlene Woods, Assistant Attorney General, Salem, argued the cause for petitioners. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James S. Coon, Portland, argued the cause for respondent. With him on the brief was Imperati, Barnett, Sherwood & Coon, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

The Oregon Executive Department and Children's Services Division (state) seek review of an Employment Relations Board order which dismissed their petition for review of an arbitration award and rejected their contention that enforcement of the award would result in a violation of law. ORS 240.086(2)(g).[1] We affirm.

Gary Christian and Larry DeForest are employed at MacLaren School as Group Life Coordinators II. The principal function of employes in that classification is to provide on-premise supervision and counseling at the cottages in which the male juveniles who are inmates of the school are detained. In November, 1984, a female counselor with the same classification as Christian's and DeForest's resigned. Her shift was from 6 a.m. to 2 p.m. The two men became interested in appointment to the vacancy, because the hours and other conditions were preferable to those of their current assignments. MacLaren has established *bona fide* occupational requirements which preclude women from certain nighttime and other shifts. Christian's and DeForest's current assignments entail shifts of that kind, and their positions could be filled only by a male, if either was appointed to the vacant position.

The collective bargaining agreement between the state and Oregon Public Employes Union, the bargaining representative for the employes, provides, in relevant part:

> "When a vacancy is to be filled, the Agency shall first accept the lateral transfer candidate from within the organizational unit who has the longest continuous service with the Agency and is qualified by classification and knowledge, skills, and abilities for the particular position."

Notwithstanding that provision, the school superintendent issued a memorandum stating that the vacant position would "not be flown for lateral transfer." His objective was to preserve the position for a female employe, to be hired as an "initial appointment to state service." The superintendent

---

[1] That statute provides that, in reviewing arbitration awards, ERB must enforce them, unless certain conditions exist. Subparagraph (g) makes an award unenforceable if it "is in violation of law."

considered that course necessary to comply with the state's and the school's affirmative action objectives. A woman was subsequently hired.

After the superintendent issued the memorandum, the union filed a grievance on Christian's and DeForest's behalf, asserting that the hiring procedure was contrary to the agreement. The grievance went to arbitration, and the arbitrator concluded that the issuance of the memorandum and the filling of the position through an initial hire rather than a lateral transfer violated the agreement. He ordered that the "position at issue be publicized for lateral transfer in accordance with the requirements of [the agreement]." State sought review of the arbitrator's decision by ERB. ERB rejected state's contention that enforcement of the arbitrator's decision would result in a violation of law by virtue of its inconsistency with the affirmative action statutes. State renews that argument here, and we also reject it.

ORS 243.305, the affirmative action policy statute, provides:

"(1) It is declared to be the public policy of Oregon that all branches of state government shall be leaders among employing entities within the state in providing to its citizens and employes, through a program of affirmative action, fair and equal opportunities for employment and advancement in programs and services and in the awarding of contracts.

"(2) 'Affirmative action' means a method of eliminating the effects of past and present discrimination, intended or unintended, on the basis of race, religion, national origin, age, sex, marital status or physical or mental handicaps."

ORS 240.306 provides specific procedures for the implementation of affirmative action:

"(1) Recruiting, selecting and promoting employes shall be on the basis of their relative ability, knowledge, experience and skills, determined by open competition and consideration of qualified applicants, without regard to an individual's race, color, religion, sex, marital status, national origin, political affiliation, age, handicap or other nonjob related factors, with proper regard for an individual's privacy. Nothing in this subsection shall be construed to enlarge or diminish the obligation of the state or the rights of employes concerning claims

of employment discrimination as prescribed by applicable state and federal employment discrimination laws.

"(2) The division shall establish procedures to provide for state-wide open recruitment and selection for classifications which are common to state agencies. Such procedures shall include adequate public notice, affirmative action to seek out underutilized members of protected minorities, and job related testing. The division may delegate to individual operating agencies the responsibility for recruitment and selection of classifications where appropriate.

"(3) Competition for appropriate positions may be limited to facilitate employment of those with a substantial physical or mental impairment or who are economically disadvantaged, or for purposes of implementing a specified affirmative action program.

"* * * * *

"(7) The division or delegated agencies shall establish systems to provide opportunities for promotion through meritorious service, training, education and career development assignments. The division shall certify to the eligibility of persons selected for promotion or delegate that responsibility to operating agencies in appropriate situations. Provision shall be made to bring persons into state service through open competition at higher levels where such competition provides abilities not available among existing employes, enrich state service or contribute to improved employment opportunity for under represented groups."

However, ORS 240.321(2) provides:

"*Notwithstanding* any of the provisions of ORS 240.235, 240.306, 240.316, 240.430 and 240.551, employes of state agencies who are in certified or recognized appropriate bargaining units shall have all aspects of their wages, hours and other terms and conditions of employment determined by collective bargaining agreements between the state and its agencies and the exclusive employe representatives of such employes pursuant to the provisions of ORS 243.650 to 243.762, *except with regard to the recruitment and selection of applicants for initial appointment to state service.*" (Emphasis supplied.)

ERB concluded that the lateral transfer requirement of the agreement is a valid provision pertaining to a subject

which is bargainable under ORS 240.321(2) and that its inclusion in the agreement does not violate the affirmative action statutes. ERB explained that ORS 240.321(2) specifies that its provisions are applicable, *notwithstanding* ORS 240.306, and that it specifically makes initial hiring a prohibited subject of bargaining, but does not do so with respect to lateral transfers and other matters concerning the promotion, transfer and assignment of existing employes.[2]

State disagrees with ERB's conclusion. It contends, first, that the arbitrator misconstrued the agreement as requiring that the position in question be filled by lateral transfer rather than through initial hiring. Insofar as that argument challenges the arbitrator's interpretation of the agreement, it is not reviewable by us. *See Fed. of Ore. Parole Officers v. Corrections Div.,* 67 Or App 559, 639 P2d 868, *rev den* 297 Or 458 (1984). However, we do not understand state to suggest that any error in the interpretation of the agreement is an independent basis for reversal; state's point seems instead to be offered as support for the major theme of its argument: if the agreement does mean what the arbitrator construed it to mean, the lateral transfer provision offends the affirmative action statutes and is invalid. State explains:

> "Bargaining on matters directly affecting the use of the state's appointment power for affirmative action purposes leads to nonuniform enforcement of affirmative action statutes and gives public employes a greater voice in determining the state's affirmative action policies then that possessed by the ordinary citizen. It is nonsensical for the legislature painstakingly to craft affirmative action policy through the political process and then subject the resulting public consensus to labor-management negotiations.

> "The legislature wisely decided that 'wages, hours and other terms and conditions of employment,' ORS 240.321(2), could be determined by negotiation and arbitration, but that entry into state service would be governed by statutory policy, including the state's affirmative action policy. Any limitation on the state's ability to use initial appointments to pursue

---

[2] It is of course true that there are prohibited subjects of bargaining in addition to the one which ORS 240.321(2) specifies. *See Eugene Education Assoc. v. Eugene School Dist. 4J,* 91 Or App 78, 754 P2d 580 (1988). As noted in the text, however, bargaining over the transfer and assignment of present employes is permissible, and we do not understand state to contend as a general proposition that it is not.

those statutory goals is unlawful. Consequently, the state cannot bargain away its ability to shape the character of the public sector work force through the use of initial appointments. To the extent that MacLaren did so by agreeing to the lateral transfer provision in its collective bargaining agreement, that provision of the agreement is void because it effectively submits a prohibited subject to bargaining."

■   Although that policy argument may be laudable, it is inconsistent with the plain language of the applicable statutes. ORS 240.321(2) makes matters regarding "recruitment and selection of applicants for *initial appointment*" a prohibited subject of bargaining. (Emphasis supplied.) However, it does not proscribe bargaining about promotions, transfers and assignments of existing employes, and those are permitted subjects of bargaining. *Gresham Grade Teachers' Association v. Gresham Grade School District,* 5 PECBR 2771 (1980); *see* note 2, *supra.* Having bargained about the subjects and agreed to the lateral transfer provision in its contract with the union, state is bound by that provision, and it is valid under the collective bargaining statutes. *See Central Point Sch. Dist. v. ERB,* 27 Or App 285, 555 P2d 1269 (1976), *rev den* 277 Or 491 (1977).

■   We also disagree with state's implicit argument that the effect of the lateral transfer provision on the implementation of affirmative action requires that the collective bargaining statutes under which the lateral transfer agreement was reached be subordinated to the affirmative action statutes. State expresses certain values concerning the appropriate allocation of authority between the policy-making process and the bargaining process. It posits, on the basis of those values, that the implementation of affirmative action must prevail over the enforcement of the collective bargaining agreement. State also draws on the legislative history of Oregon Laws 1979, chapter 468, through which ORS 240.306 and ORS 240.321(2) were enacted, for traces of evidence that members of the legislature and proponents of the act shared those values. However, state's argument ignores the statutory language, which clearly recognizes a different scheme of values—employe representation and collective bargaining—as pre-eminent in connection with the promotion, transfer and assignment of persons already employed in the classified state service. ORS 240.321(2), which defines the

scope of collective bargaining, is expressly applicable to terms and conditions of employment, with the exception of initial hiring, "[n]otwithstanding any of the provisions of * * * ORS 240.306."

Affirmed.